**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| RICHARD WEBBER, as Special Administrator of the estate of SARA J. SCHMIDT | |
| *Plaintiff*, | |
| v. | No. |
| ARMSLIST LLC, | |
| and | |
| JONATHAN GIBBON | |
| *Defendants*. | |

**COMPLAINT AND JURY DEMAND**

Plaintiff Richard Webber, as Special Administrator of the estate of Sara J. Schmidt, by his attorneys, states and alleges as follows:

**Introduction**

1. This case is about a reckless business that intentionally put its desire for profits over the lives and safety of others, and a woman who lost her life because of it.

2. The business is Armslist (collectively referring to Defendants Jonathan Gibbon ("Gibbon") and Armslist LLC, an online gun marketplace at Armslist.com).

3. The woman is Sara J. Schmidt.

1

4.     Armslist knew, before it chose to start its gun business, that the internet could be a dangerous place to sell guns.

5.     Armslist knew that eBay, Amazon, Craigslist, and many other online vendors had ceased to allow online gun sales on their websites to avoid arming dangerous people and, thereby, causing the injury and deaths of innocent people.

6.     Armslist knew that, under federal law, only licensed gun dealers (also known as Federal Firearms Licensees or "FFLs") may legally engage in the business of selling guns.

7.     Armslist further knew that FFLs may only sell guns (i) in face-to-face transactions, (ii) after completing a Brady background check on any prospective purchaser to prevent transfers to individuals disqualified from owning weapons under federal and/or state law ("Prohibited Possessors"), and (iii) provided that transaction records of each sale are completed and retained to assist law enforcement in investigating and/or preventing gun crimes.

8.     Armslist is not an FFL.

9.     Armslist knew that criminal gun buyers and sellers frequently exploit a legal loophole allowing "occasional" gun sales by unlicensed persons (or "private sellers") without background checks, transaction records or other safeguards that prevent Prohibited Possessors from illegally buying guns.

10.     Armslist knew that on the internet, criminals and would-be criminals can lurk, hidden behind a computer screen, and arrange to illegally buy or sell guns to be used in crimes, without background checks, transaction records or compliance with other regulations required of gun dealers by federal and state law.

11.     Armslist further knew that criminals – including Prohibited Possessors – often seek out unlicensed sellers because they prioritize evading these legal restrictions over price, availability, and service.

12.     Armslist knew that lawful purchasers are not likely to seek out unlicensed sellers because private sales have significant disadvantages for legitimate, law-abiding purchasers as compared to sales from FFLs.

13.     Armslist knew in 2018 that Armslist.com was facilitating illegal and reckless sales by non-FFLs, and illegal gun purchases by Prohibited Possessors, and implemented no measures to prevent or obstruct such sales and purchases.

14.     Armslist knew that some online firearms businesses require that no guns be transferred without a background check and records at a licensed firearms dealer, and that it could implement that and other reasonable measures to prevent illegal purchases and sales.

15.     Armslist had both the knowledge and ability to design and operate its online gun business with safeguards to prevent illegal sales.

16.     Armslist did not implement any reasonable measures to prevent the trafficking of weapons likely to be used in violent crimes.

17.     Instead, Armslist capitalized on the market opportunity created when other companies left the online firearms space, by creating and designing its internet gun marketplace with features that actively encouraged, assisted and facilitated illegal firearms purchases and sales.

18.     Armslist designed and built its gun marketplace using computer code just as someone builds a house or a store using bricks and mortar.

3

19.     Armslist chose to design and build Armslist.com to allow, enable and assist illegal gun buyers and sellers to buy and sell guns through design content which, among other things, enabled and encouraged such sales to take place anonymously, without registration, records, or screening to determine their legality, without limits on the number of guns that could be bought or sold by individual users, and with assurances that Armslist would not investigate or enable its users to flag illegal activities.

20.     Armslist knew and intended that the design of Armslist.com would attract, encourage, assist and facilitate Prohibited Possessors, criminals and unlawful sellers in illegally obtaining or transferring guns.

21.     Long prior to the sale of the firearm on Armslist.com that was used to kill Sara (the "Armslist Handgun") Armslist knew with a certainty that Armslist.com's design content was helping arm criminals – as documented by well-publicized news stories and studies.

22.     Armslist has been sued repeatedly for facilitating the supply of firearms to the criminal market, including for its role in arming, *inter alia*, the man who killed three – including his estranged wife – and wounded four others in a mass shooting at the Azana Spa in Brookfield, Wisconsin in 2012;[1] the man who stalked and then killed a woman in Chicago outside her workplace; the convicted felon who shot a Boston police officer; and the convicted felon who shot and killed a Chicago police commander.

23.     Armslist has done nothing to change the design or operation of Armslist.com to reduce the foreseeable risk of human suffering it causes and instead has attempted to raise money from the lawsuits which have aimed to curtail its misdeeds.

---

[1] In deference to the desire of many victims to not give attention to criminals (*see* https://nonotoriety.com/), this Complaint will refer to the shooters in descriptive terms (*e.g.,* the "Azana Spa killer," "Sara's killer" or "Sara's estranged husband" rather than stating their names.

4

24.     Armslist knew that its choices in designing, constructing and maintaining Armslist.com – and its regular attraction of illegal gun buyers and sellers – made it a virtual certainty that the guns sold through "private sellers" on Armslist would be used by Prohibited Purchasers, including criminals, to commit murders.

25.     The only thing Armslist did not know was the name of its next victim.

26.     Her name was Sara Schmidt.

27.     Sara was a young mother of three, living in Harrison, Wisconsin.

28.     Sara's estranged husband horrifically abused her and raped her.

29.     Because she was concerned about her safety and the safety of her children, Sara summoned the strength to report to law enforcement that her estranged husband had raped her.

30.     A court order stemming from the charges prohibited him from purchasing or possessing guns, and he surrendered the firearm in his possession at the time of the rape.

31.     About five years after another abusive husband in Wisconsin illegally obtained a gun through Armslist to kill his wife and others in the Azana Spa mass shooting, Sara's killer foreseeably used and/or relied upon the design content on Armslist.com to acquire the Armslist Handgun and used it to kill Sara.

32.     Plaintiff Richard Webber, as Special Administrator of the estate of Sara J. Schmidt, brings this lawsuit to, finally, hold Armslist accountable for its conduct.

33.     Armslist is not above the law simply because it used computer code to construct its marketplace and engages in its negligent and unlawful conduct on the internet.

34.     Armslist can and should be held accountable for its negligent and unlawful conduct in encouraging, assisting and facilitating illegal firearms transactions.

**Jurisdiction and Venue**

5

35.     Jurisdiction is proper in this case under 28 U.S.C. § 1332 because the parties are completely diverse in citizenship and the amount in controversy, on information and belief, exceeds $75,000.

36.     Venue is proper in this district pursuant to § 1391(b)(2) because, upon information and belief, a "substantial part of the events or omissions giving rise to the claim" occurred in this district.

## Parties

37.     Plaintiff Richard Webber is an Arkansas resident and Sara's father.

38.     He is bringing this action as the Special Administrator of Sara's estate.

39.     Upon information and belief, Defendant Armslist LLC is a Pennsylvania limited liability company with a principal place of business at 616 Magee Avenue, Jeannette, Pennsylvania 15644.

40.     Armslist LLC owns and operates Armslist.com and derives its primary revenue from selling advertising space on Armslist.com.

41.     Armslist conducts a significant amount of activity in Wisconsin, with a substantial number of buyers and sellers of guns using Armslist.com in Wisconsin.

42.     Upon information and belief, Defendant Gibbon is an individual residing at 616 Magee Ave., Jeanette, Pennsylvania 15644 who was, at all relevant times, a member of Armslist LLC and who played a role in the design, architecture, and administration of Armslist.com.

## Factual Allegations

A. <u>Armslist Chose to Create Armslist.com to Corner the Online Black Market in Firearms</u>

43.     Armslist.com is a for-profit online firearms marketplace.

44.     Armslist.com was created after several prominent websites chose to stop allowing online private sales of firearms.

6

45.     For example, in 2002, eBay, the multibillion-dollar online auction and trading community, announced that it was prohibiting gun sales on its website.

46.     eBay decided to end user listings of firearms because the internet "was not an appropriate venue for that kind of merchandise" due to the fact that "the process of buying and selling firearms online is sufficiently different from the offline world" and that "online sellers cannot readily guarantee that buyers meet all the qualifications and comply with the laws governing firearm sales."

47.     In or around 2007, Craigslist, the ubiquitous classified advertisements website, also banned firearm sales from its site.

48.     Other web services (including Amazon.com's third-party seller program and Google's "AdWords" ad-serving platform) similarly prohibit the listing of firearms.

49.     Armslist saw the exit of these more responsible corporate citizens as an opportunity to dominate the online criminal gun market.

B.    Armslist Knew It Would Be Assisting in the Circumvention and Violation of Gun Laws.

50.     Just as road signs and safety measures are needed at dangerous curves where accidents are likely to occur, reasonable safeguards accompanying firearms transactions are necessary to prevent illegal conduct.

51.     Armslist knew that by launching Armslist.com without reasonable safeguards, it would invite and facilitate illegal firearm sales and other sales supplying Prohibited Possessors and the criminal market writ large.

52.     Armslist knew that prospective unlawful gun purchasers would be attracted to unlicensed sellers from whom firearms could be purchased without a background check, record-keeping requirements or compliance with other regulations.

7

53.     Armslist knew or should have known that "private sellers" often offer buyers used guns in worse condition, at higher prices, with no service or warranty and with a more limited selection than licensed gun dealers.

54.     Armslist knew or should have known that unlawful buyers are willing to tolerate these disadvantages and pay a premium to private sellers because of the added value of skirting background checks, record keeping requirements and compliance with other regulations applicable to gun sales by FFLs.

55.     Armslist knew or should have known that a large number of individuals listed as "private sellers" on Armslist.com are, in fact, "engage[d] in the business" of selling large quantities of firearms as commercial enterprises without licenses in violation of federal law. 18 U.S.C. § 923(a).

56.     A widely-publicized report by Mayors Against Illegal Guns ("MAIG") in 2013 observed that an "investigation of high-volume online sellers [on Armslist.com] show[ed] that hundreds of gun sellers were using the internet to transfer tens of thousands of firearms each year, blurring the line between private sellers and licensed dealers, undermining the background check system, and putting guns in the hands of killers."

57.     Private sales conducted over the internet have repeatedly been linked to illegal gun trafficking and direct or indirect sales to Prohibited Possessors – including minors, domestic abusers, and felons.

58.     Internet sales have also been connected to several well-documented mass shootings, including the 2007 shooting at Virginia Tech (which killed 32 people and left over a dozen wounded) and the 2008 shooting at Northern Illinois University (where 5 were killed and 17 more were wounded).

Case 1:20-cv-01526   Filed 10/01/20   Page 8 of 37   Document 1

59. Armslist knew that most of its sellers are "private sellers" whose transactions are not subject to background checks and other limitations under federal law.

60. A 2013 examination of Armslist.com postings by the *New York Times* revealed that 94% of the advertisements on the site were posted by "private sellers."

61. Online "private sellers" are well-known to be, in many cases, unscrupulous, irresponsible and amenable to supplying Prohibited Possessors.

62. A well-publicized undercover investigation of online gun sales conducted by the City of New York in 2011 also found, *inter alia*, that: (1) 62% of "private sellers" agreed to sell a gun to a buyer who stated that he or she probably could not pass a background check; (2) 54% of Armslist.com "private sellers" were willing to make a sale to a person they believed could not pass a background check; and (3) 67% of "private sellers" in Wisconsin were willing to make a sale to a person they believed could not pass a background check.

63. Armslist knew that a significant number of buyers on Armslist.com were attracted to its "private sellers" because they prioritized evading federal and state gun laws and seeking anonymity.

64. Since the price of advertising space on Armslist.com is directly correlated with the number of transactions and users Armslist.com supports, Armslist's revenue is almost entirely dependent on the sales traffic of "private sellers."

65. In 2018 alone, Armslist.com had almost 1.2 million advertisements for firearms transactions from "private sellers" where no background check was required.

66. Many or all of these transactions were also exempt from any recordkeeping requirements.

9

67.     Although some states have instituted background check requirements on at least some private sales, Wisconsin imposes no such requirements.

68.     Upon information and belief, Armslist was well aware of these facts when it created and/or was maintaining and operating Armslist.com prior to 2018.

C.     Armslist Designed Its Marketplace to Facilitate and Assist in Illegal Gun Sales and Purchases.

69.     Websites can easily be made to require users to register accounts, to verify the users' identity, to restrict access to bad actors and to limit the potential that the site will be used for illicit or dangerous ends.

70.     Armslist.com did not include such reasonable safeguards.

71.     Armslist, instead, created, implemented, and maintained elements of design content on Armslist.com to maximize the likelihood that guns would be illegally bought and sold and that criminals and other Prohibited Possessors would illegally obtain guns.

72.     Armslist created and provided tailored tools to enable unlawful buyers like Sara's killer to easily identify, interact with and transact with "Private Party" sellers so as to evade background checks and other measures that would apply at an FFL in the real world.

73.     Armslist encouraged, assisted and facilitated unlawful conduct by these individuals by providing explicit and implicit assurances of an absence of any supervision of firearms transactions through Armslist.com and a policy of non-reporting.

74.     At each step of the design process Armslist had a choice whether to design and maintain Armslist.com to prevent illegal gun sales and purchases.

75.     At each step, Armslist chose to create design content (including, in some, cases, written statements) to enable, assist and encourage illegal gun sales and purchases.

10

76.     Armslist could have designed its website to prevent illegal gun buyers and sellers from using Armslist.com by designing and implementing content on Armslist.com that:

    a.  blocked criminals and Prohibited Possessors from accessing Armslist.com or buying a gun through the website;

    b.  did not actively encourage, assist and facilitate illegal firearms transactions;

    c.  required greater transparency from users, such as by requiring both buyers and sellers to create accounts and provide credit-card verified evidence of their identities before posting on or purchasing through the website;

    d.  required sellers to conduct background checks on would-be gun buyers and to keep transaction records;

    e.  recommended that sellers conduct background checks and create transaction records while providing tools to facilitate such background checks and transaction records;

    f.  required that buyers certify under oath that they are legal purchasers;

    g.  required that buyers provide evidence that they are legal purchasers (including by uploading the results of criminal records checks);

    h.  required that sellers certify under oath that they are legal sellers;

    i.  required that sellers provide evidence that they are legal sellers;

    j.  required that any purchaser of a gun from a "private seller" take delivery of the gun through an FFL who would run a background check and create a formal transaction record of the buyer;

    k.  enabled and prominently encouraged users to flag potentially illegal conduct and to alert Armslist and law enforcement of any such conduct;

11

l.   provided extensive and regularly updated information regarding all applicable firearms laws; and

m.  imposed a reasonable waiting period on all transactions brokered through the site in order to prevent emotionally unstable individuals like Sara's killer from quickly acquiring guns while they are in crisis and prone to impulsive outbursts of violence.

77.     In Wisconsin, individuals can obtain their criminal history free of charge, and that history can then be easily uploaded to a website.

78.     Instead of installing the reasonable safeguards, Armslist installed design content which actively encouraged, assisted and enabled illegal firearms sales and purchases on Armslist.com.

79.     Armslist, upon information and belief, prior to 2018, labeled "For Sale" postings on Armslsit.com as being authored by a "Private Party" as a default if the user did not have an established account when using the "Create a Listing" function – as illustrated by the interface page below (box added for emphasis) :



Upon information and belief, the information on the interface page contained in the box on the image above was ultimately translated by Armslist.com into tags displayed on the advertisements posted by users on Armslist.com. See, e.g., https://www.armslist.com/posts/12143207/appleton-wisconsin-handguns-for-sale--glock-19-gen-

12

4---brownells-slide:



80.    Armslist displayed its "Private Party" tag in advertisements, not as a result of the user selecting an option on any menus, but as a result of content created entirely by Armslist.

81.    By automatically applying the words "Private Party" to advertisements created by users without an account prior to 2018, Armslist made the "Private Party" label a default for users who did not have an account.

82.    Armslist's default designation directed users to sales without background checks, transaction records and other regulations imposed by federal law.

83.    Armslist's "Private Party" designation and additional filtering functions using the "Private Party" tag helped Prohibited Possessors like Sara's killer to identify and locate "Private Party" sellers.

84.    Similarly, Armslist's tagging scheme and filtering tools assisted and enabled Plaintiff's counsel to locate a Glock 19 handgun similar to the Armslist Handgun offered for sale by a "private seller" in the Appleton area in under five minutes on July 27, 2020. *See*

13

https://www.armslist.com/classifieds/search?location=wisconsin&category=all&search=glock+1 9&posttype=7&sellertype=1 (boxes added for emphasis):



85.     Armslist also created and published its own content on Armslist.com's Terms of Use Page (https://www.armslist.com/info/terms) that informs users that it will exercise no oversight to detect or curtail illegal commerce in firearms on Armslist.com by stating that: ". . . ARMSLIST DOES NOT become involved in transactions between parties and does not certify, investigate, or in any way guarantee the legal capacity of any party to transact." *Id*.

86.     Armslist created and published its own content on Armslist.com's FAQ Page (https://www.armslist.com/info/faqs) that informs users that Armslist will not interfere with illegal transactions by telling users that ". . . ARMSLIST *can not* [sic] and *will not* be a party in transactions. It is the sole responsibility of the buyer and seller to conduct safe and legal transactions." *Id*. (emphasis in original).

14

87. Armslist's assurances of lack of oversight for illegal gun sales implicitly acknowledge that Armslist.com's features readily enable violation of state and/or federal firearms laws, and its Terms of Use Page requires users to agree to indemnify Armslist for "direct or indirect results of violations of any and all applicable laws" committed by the users. *Id.*

88. Armslist created content that enables users to flag problematic activities by labelling certain posts for potential removal for various reasons; however, it did not enable users to flag solicitation or promotion of illegal conduct as a reason for potential removal of a post from the website. *See* FAQ Page (box and arrow in original):



89. Armslist's decision to not enable flagging of illegal conduct encouraged and emboldened illegal conduct by indicating to illegal gun buyers and sellers that they could break the law with impunity on Armslist.com.

90. Armslist.com could have designed its website to prevent illegal and reckless gun sales and purchases, including by limiting purchasers to those who can legally buy guns; limiting sellers to legal sellers; limiting sellers to only FFLs who, by law, would have to verify a prospective purchaser's identity, maintain a record of the transaction and conduct a background check that screens out Prohibited Possessors; or implementing other safeguards.

15

91.     Armslist chose to design Armslist.com to connect non-FFL sellers with individuals desiring to purchase firearms without a background check or the concern of transaction tracking.

92.     Armslist.com could have, but did not, require any user to certify under oath that he or she is a legal buyer or seller and/or require any proof that he or she is a lawful buyer or seller.

93.     Armslist.com could have, but did not, require or recommend to sellers that they conduct background checks or keep transaction records.

94.     Armslist.com could have, but did not provide detailed and up-to-date information to its users regarding applicable federal and/or state firearms laws.

95.     Armslist could have, but did not, impose a waiting period on transactions brokered on Armslist.com to prevent emotionally unstable individuals like Sara's killer from quickly acquiring guns while they are in crisis and prone to impulsive outbursts of violence.

96.     Armslist.com, prior to 2018, explicitly emphasized and advertised, as a key design feature of the site, that "You can perform all of the major functions [such as creating a listing] without creating an account." *See* FAQ Page.

97.     Armslist knew or should have known that the advertisement of anonymity would attract illegal purchasers or sellers and raise concerns with legitimate sellers who would want to verify customer identities.

98.     Armslist created and provided an anonymous internal messaging system to connect buyers or sellers without either side having the ability to verify the other side's identity.

99.     Armslist actively advertised a policy of confidentiality and anonymity which it knew or should have known would attract buyers likely to use firearms illegally. *See* FAQ Page

16

("Q: Can ARMSLIST contact a seller for me or provide me with information about a user? Due to our privacy policy, ARMSLIST can only provide information to law enforcement during due process of law.").

100. Armslist knew or should have known that by attracting Prohibited Purchasers like Sara's killer through features and statements directing buyers to "private sellers" while also assuring anonymity and disclaiming supervision, it would be encouraging, assisting and facilitating Prohibited Possessors – including domestic abusers – in using Armslist.com as a platform through which to illicitly acquire guns.

101. Armslist further knew or should have known that such individuals would use these guns to cause death and injury to innocent people.

102. Armslist knew or should have known that domestic abuse victims like Sara are especially likely to be fatally victimized when Prohibited Possessors who are domestic abusers illicitly gain access to guns.

103. One study found that the presence of a gun in domestic violence situations increases the likelihood a female partner will be killed by 500%.

104. A report by End Domestic Abuse Wisconsin (EDAW), noted that firearms were the most common means of murder in domestic violence homicides in Wisconsin – accounting for over 50% of all such deaths in 2016.

105. EDAW noted that these murders included at least six incidents where the shooter, like Sara's killer, was a Prohibited Possessor.

106. Domestic abuse homicides involving firearms are roughly 46% higher in states which do not require background checks on the private sales of firearms than in states where such sales are subject to background checks.

17

107.    Firearms are significantly more likely than other weapons to cause fatal injuries to a domestic abuse victim like Sara.

108.    The unreasonable risk that domestic violence abusers will harm themselves or others – and especially current or former partners – is why both Wisconsin and federal law label domestic abusers subject to court orders as an important class of Prohibited Possessors.  Wis. Stat. §§ 941.29(1m)(g), 813.125; 18 U.S.C. § 922(g)(8).

D.    Armslist Had Notice That Its Design Content Was Channeling Firearms to the Criminal Gun Market Prior to 2018, But Chose Not to Address This Problem.

109.    Armslist knew that Armslist.com was encouraging, assisting and facilitating Prohibited Possessors like Sara's killer to illicitly acquire firearms while evading background checks and tracking prior to 2018.

110.    A 2013 MAIG report noted that of all "Want to Buy" ads on Armslist.com, one in thirty were posted by someone with a criminal record that barred him or her from owning a gun - quadruple the rate of attempted barred purchases at brick-and-mortar FFLs.

111.    A 2013 study by Third Way and Americans for Responsible Solutions reported that the average number of "Want to Buy" advertisements on Armslist.com was 240% higher in states like Wisconsin which do not require background checks on "private sales" than in states where such background checks are required.

112.    Wisconsin had the fifth-highest number of "Want to Buy" advertisements seeking out "private sellers."

113.    Upon information and belief, Armslist was aware of the factual findings in these and other similar reports prior to Sara's killer's use of Armslist.com to illegally acquire the Armslist Handgun in January 2018.

114.    Armslist had, prior to 2018, specific notice that Armslist.com had encouraged, assisted and enabled criminals in carrying out heinous acts of gun violence (including in Wisconsin).

115.    Armslist encouraged, assisted and facilitated the Azana Spa killer in illegally acquiring the murder gun in a "private sale" while avoiding detection or apprehension by law enforcement.

116.    In another high-profile incident, Armslist.com brokered the sale of the 40-caliber handgun used in the 2011 murder of Jitka Vesel in Oak Brook, Illinois.

117.    The Oak Brook killer was a Prohibited Possessor, but obtained his murder weapon through Armslist.com from a self-identified "private seller" who sold over 20 firearms on Armslist.com.

118.    This seller was likely in violation 18 U.S.C. § 923(a) by "engag[ing] in the business" of selling firearms as a commercial enterprise without a license.

119.    These are far from the only examples of Armslist arming dangerous parties seeking to evade background checks and/or compliance with other regulations.

120.    Other examples also reported in the 2013 MAIG report and/or the New York Times, include but are not limited to:

    a.    A 29-year-old man in Colorado Springs, Colorado with disqualifying convictions for burglary, theft of a motor vehicle and a domestic violence misdemeanor repeatedly posted "Want to Buy" advertisements on Armslist.com seeking the cash sale of a handgun in February 2013.

    b.    A 27-year-old man in Louisville, Kentucky with a disqualifying conviction for a 2006 assault on the mother of his child placed a "Want to Buy" ad on

Case 1:20-cv-01526    Filed 10/01/20    Page 19 of 37    Document 1

Armslist.com on March 28, 2013 seeking a XDM 3.8" handgun while promising that he "w[ould] pay cash."

    c.    A 27-year-old man in Fort Collins, Colorado with disqualifying convictions for domestic harassment of an ex-girlfriend and violating a restraining order placed a "Want to Buy" ad on Armslist.com March 30, 2013 seeking an M&P22 handgun.

121.    Armslist, in addition to having notice of the prevalent unlawful and dangerous commerce in firearms on Armslist.com, also had knowledge of basic, common-sense safeguards it could have taken to stop Armslist.com from diverting large quantities of guns to bad actors, including, without limitation:

    a.    requiring greater transparency from users, such as by requiring both buyers and sellers to create accounts and provide credit-card verified evidence of their identities before posting advertisements or communicating with sellers on the website; and

    b.    requiring sellers to conduct background checks on would-be gun buyers or, at a minimum, recommending that users conduct background checks and providing tools to facilitate such background checks.

122.    Armslist also knew or should have known, prior to 2018, that it could have required that any purchasers of guns from "private sellers" take delivery of their guns through a FFL which would have conducted a background check and kept a record of the transactions.

123.    Some or all of these procedural safeguards reducing the opportunity for anonymous and unchecked Prohibited Possessors to acquire guns have been adopted, in whole or in part, by other online gun marketplaces such as ShootersXchange.com, GunAuction.com, GunBroker.com and GunRunnerAuctions.com.

20

124. Such safeguards were economically and technologically feasible prior to 2018.

125. Armslist, instead of installing these safeguards, implemented and maintained design content which encouraged, assisted and facilitated unlawful firearms sales and purchases; Armslist profited greatly from its role in the illegal firearms market.

126. Armslist did so despite knowing that people like Sara would be maimed or killed by guns illegally purchased through Armslist.com as a result of its misconduct.

127. Armslist intentionally enriched itself with profits derived from actively channeling weapons to criminals while ignoring the unconscionable cost upon society and individuals like Sara.

128. Armslist has made no significant reforms to its operation since Sara's murder.

129. A survey from Everytown for Gun Safety released in 2019 reinforced the findings of prior studies and investigations: that Armslist.com remains a haven for illegal firearms transactions.

130. The Everytown survey found that one in nine would-be buyers on Armslsist.com across several states were prohibited from owning guns under federal or state law — a frequency over seven times higher than the frequency with which Prohibited Possessors fail background checks at licensed dealers or in other contexts where background checks are required.

131. Sixty five percent of Armslist.com sellers contacted by undercover Everytown operatives reported willingness to complete a sale without a background check.

E. The Design Content Armslist Implemented on Armslist.com Predictably Assisted, Encouraged and Facilitated Sara's Killer in Illegally Acquiring the Armslist Handgun and Foreseeably Led to Her Death.

132.    The eerie similarity between the facts leading up to Sara's death and the facts leading up to the Azana Spa shooting compellingly underscore that her murder was caused by, and was an eminently foreseeable result of, Armslist's misconduct.

133.    Sara, like Zina Daniel (the primary target of the Azana Spa killer), was the victim of domestic abuse at the hands of her estranged husband.

134.    On December 31, 2017, Sara's killer perpetrated a particularly heinous act of domestic violence.

135.    He threatened Sara with a gun that he had bought from an FFL and raped her.

136.    Sara courageously reported the attack to police on January 2, 2018 in an effort to protect herself and her children.

137.    Sara's killer was charged with one or more felonies and placed in jail as a result of the rape involving the firearm purchased from the FFL.

138.    Upon information and belief, the firearm Sara's killer used in the rape was surrendered to police and he did not have access to any other firearms at the time of his release from jail.

139.    When released from jail on January 5, 2018, Sara's killer became the subject of a court order which prohibited him from possessing any firearms and mandated that he wear a GPS monitor.

140.    Sara filed for divorce on January 5, 2018.

141.    Like the Azana Spa killer, both state and federal law made it unlawful for Sara's killer to purchase or possess a gun at this point.  Wis. Stat. §§ 941.29(1m)(g), 813.125; 18 U.S.C. § 922(g)(8).

22

142.     As a result of his domestic violence record, a Brady background check would have flagged and disqualified Sara's killer from purchasing a firearm from an FFL.

143.     Sara's killer (like the Azana Spa killer) foreseeably sought to buy a gun through means which circumvented a background check and other regulations imposed on FFLs.

144.     Armslist.com, as in the Azana Spa killing, provided Sara's killer with an easy and expeditious mechanism by which to illegally obtain a gun.

145.     Sara's killer chose Armslist.com over one or more other easily accessible firearms marketplaces – such as ShootersXchange.com, GunAuction.com, GunBroker.com and GunRunnerAuctions.com.

146.     Upon information and belief, Sara's killer chose Armslist.com specifically because of its design and the omission of reasonable safeguards present on competitor marketplaces.

147.     Upon information and belief, by utilizing and/or relying on the features discussed in this Complaint and other similar aspects of design content on Armslist.com, Sara's killer was able to locate an unlicensed seller – Brock Verstagen - willing to sell him a gun without a background check and to arrange for the unlawful purchase of the Armslist Handgun on January 8, 2018 in violation of, at minimum,  Wis. Stat. §§ 941.29(1m)(g), 813.125 and 18 U.S.C. § 922(g)(8).

148.     Upon information and belief, Armslist materially contributed to, induced, and became responsible as a collaborator and/or co-author in Verstagen's ad and the substance of any communications sent by Sara's killer to Verstagen, including through Armslist's designation of Verstagen as a "Private Party."

149.    The short window of time between Sara's killer's outreach to Verstagen and the actual purchase of the Armslist Handgun provided no "cooling off" period in which Sara's killer might have been able to control his murderous impulses.

150.    Upon information and belief, and consistent with the culture of anonymity created and encouraged by the design content on Armslist.com, Sara's killer never disclosed his real name or identity to Verstagen.

151.    Upon information and belief, Sara's killer, like a number of the Prohibited Possessors described above, emphasized an interest in paying in cash due to a desire to minimize any records (financial or otherwise) linking him to the illicit purchase of the Armslist Handgun.

152.    On January 9, 2018, less than two weeks after he had assaulted Sara, one day after the illegal purchase of the Armslist Handgun brokered through Armslist.com, and only four days after he had been released from jail, Sara's killer used the Armslist Handgun to open fire on Sara when she arrived at his mother's home to drop off her three young children.

153.    He fatally shot Sara and then killed himself in the backyard of the house.

154.    His parents and Sara's children were within earshot when Sara was killed.

155.    Sara's killer would never have had the Armslist Handgun on January 9, 2018 – and Sara would still be alive – if Armslist had been responsible, reasonable and lawful in how it designed and administered Armslist.com and not contributed to illegal firearm transactions.

156.    Sara's killer would, upon information and belief, have been prevented from acquiring a gun through Armslist.com and/or stopped by law enforcement prior to harming Sara had Armslist designed its site to, *inter alia*:

    a.    prohibit criminals and Prohibited Possessors from accessing the website or buying a gun through Armslist.com;

b.  not actively encourage, assist and facilitate illegal firearms transactions such as through the design content discussed above;

c.  require greater transparency from users, such as by requiring both buyers and sellers to create accounts and provide credit-card verified evidence of their identities before posting on or purchasing through the website;

d.  require sellers to conduct background checks on would-be gun buyers and to keep transaction records;

e.  recommend that sellers conduct background checks and create transaction records while providing tools to facilitate such background checks and transaction records;

f.  require that buyers certify under oath that they are legal purchasers;

g.  require that buyers provide evidence that they are legal purchasers (including by uploading the results of criminal records checks);

h.  require that sellers certify under oath that they are legal sellers;

i.  require that sellers provide evidence that they are legal sellers;

j.  require that any purchaser of a gun from a "private seller" take delivery of the gun through an FFL who would run a background check and create a formal transaction record of the buyer;

k.  enable and prominently encourage users to flag potentially illegal conduct and to alert Armslist and law enforcement of any such conduct;

l.  provide extensive and regularly updated information regarding all applicable firearms laws; and

25

m. to impose a reasonable waiting period on all transactions brokered through the site in order to prevent emotionally unstable individuals like Sara's killer from quickly acquiring guns while they are in crisis and prone to impulsive outbursts of violence.

157. Armslist flagrantly violated its duty of reasonable care by failing to implement any of the measures outlined above.

158. Armslist is also indirectly responsible, as an accomplice and/or co-conspirator, for the direct violations of applicable firearms laws committed by Sara's killer – including, but not limited to, Wis. Stat. §§ 941.29(1m)(g), 813.125; and 18 U.S.C. § 922(g)(8).

159. The fact that these common law and statutory duties of care, if violated, would foreseeably lead to a Prohibited Possessor with a disqualifying record (like Sara's killer) using a firearm illicitly purchased on Armslist.com to kill a domestic abuse victim (like Sara) could not have been more clear to Armslist, especially in light of the Azana Spa shooting.

160. Armslist.com is liable not for passively publishing third-party content; it is liable for tragedies like Sara's death because it is an active participant in designing, creating and maintaining a dangerous marketplace that disproportionately and foreseeably arms people like Sara's killer.

161. It is also responsible for creating, either as the author or a co-author, content associated with the solicitation, encouragement, advertisement and/or completion of illicit firearms transactions it knows will result in incidents like Sara's murder.

**Claims for Relief**

<u>Count 1 – Negligence Against Armslist (Referring to Both Defendants)</u>

162. The preceding paragraphs are incorporated by reference herein.

26

163.    At all relevant times, Armslist had a general duty to the public – including domestic violence victims like Sara – to exercise reasonable care in creating and administering a marketplace for the sale of firearms so as to minimize the risk of death or serious injury to members of the public resulting from these firearms falling into the hands of individuals legally prohibited from owning such weapons.

164.    Armslist had the duty to refrain from actions that would encourage, assist or facilitate disqualified domestic abusers subject to court orders and other Prohibited Possessors from acquiring guns and to implement reasonable safeguards, screening and monitoring procedures on Armslist.com to inhibit unlawful firearms sales or purchases.

165.    Armslist flagrantly and callously breached these duties by, *inter alia*:

    a.  failing to prohibit criminals and Prohibited Possessors from accessing or buying a gun through Armslist.com;

    b.  actively encouraging, assisting and facilitating illegal firearms transactions through the design content discussed above;

    c.  failing to require greater transparency from users, such as by requiring both buyers and sellers to create accounts and provide credit-card verified evidence of their identities before posting advertisements or communicating with sellers on the website;

    d.  failing to require sellers to conduct background checks on would-be gun buyers and to create transactions records;

    e.  failing to recommend (or provide tools for) sellers to conduct background checks and create transaction records on would-be buyers;

27

f.   failing to require that buyers certify under oath and/or provide evidence that they are legal purchasers (such as by uploading the results of criminal records checks to the site);

g.   failing to require that sellers certify under oath and/or provide evidence that they are legal sellers;

h.   failing to require that any purchaser of a gun from a "private seller" take delivery of the gun through an FFL who would run a background check and create a formal transaction record of the buyer;

i.   failing to enable and prominently encourage users to flag potentially illegal conduct and to alert Armslist and law enforcement of an such conduct;

j.   failing to provide extensive and regularly updated information regarding all applicable firearms laws to its users; and

k.   failing to impose a reasonable waiting period on all transactions brokered through the site in order to prevent emotionally unstable individuals like Sara's killer from quickly acquiring guns while they are in crisis and prone to impulsive outbursts of violence.

166.   Breach of these duties constitutes negligence.

167.   Some or all of the safeguards listed above have been implemented in whole or in part by some of Armslist's .competitor's websites.

168.   Had some or all of these safeguards been implemented on Armslist.com prior to Sara's killer seeking to acquire a gun through Armslist.com, he would, upon information and belief, not have had possession of the Armslist Handgun on January 9, 2018 and/or would have been stopped by law enforcement before he could murder Sara.

28

169.    Armslist knew or should have known that unlawful sales conducted on Armslist.com were likely to supply Prohibited Possessors and that these bad actors would use guns acquired through Armslist.com to harm innocent third parties.

170.    In particular, Armslist knew or should have known that domestic abusers are one important class of Prohibited Possessors and that they are likely to target current or former partners.

171.    It was thus entirely foreseeable that Defendants' reckless and intentional design of Armslist.com would channel firearms to Prohibited Possessors and that an individual like Sara's killer would use a firearm acquired through Armslist.com to harm a current or former partner (as in the Azana spa Shooting).

172.    Sara's death was the direct and proximate result of Armslist's misconduct.

173.    As a result of Armslist's misconduct, Sara, whose estate is herein represented by Richard Webber in his capacity as an administrator, suffered damages – including significant pain, suffering, awareness of impending death, fear of impending death, mental anguish, funeral expenses and other compensable injuries and damages, all to the harm of her estate in an amount to be determined at trial.

174.    Sara's children have also suffered substantial harm as a consequence of her murder, including, but not limited to, pecuniary loss, loss of Sara's support and companionship and/or emotional distress.

175.    Upon information and belief, the damages for which Armslist is liable are well in excess of $75,000.

Count 2 – Negligence Per Se Against Armslist (Referring to Both Defendants)

176.    The preceding paragraphs are incorporated by reference herein

29

177.    Breach of a statutory standard of care constitutes negligence.

178.    A party who acts as an accomplice and/or co-conspirator to a party who directly violates a statue can be held responsible, indirectly, for the violation of that statute.  *See* 18 U.S.C. § 2;  Wis. Stat. § 939.05.

179.    "Willful blindness" to clear "red flags" of criminal activity equates to constructive knowledge under the law and is sufficient to support indirect criminal liability for statutory violations directly committed by a third party.

180.    Sara's killer violated statutes including, but not limited to, Wis. Stat §§ 941.29(1m)(g) and  813.125; and 18 U.S.C. § 922(g)(8) when he acquired the Armslist Handgun.

181.    Armslist had, prior to 2018, actual and/or constructive knowledge based on "willful blindness" to clear "red flags" that a large number of Prohibited Possessors such as Sara's killer were illicitly acquiring guns through Armslist.com in violation of these and similar laws.

182.    Armslist is indirectly responsible as an accomplice and/or co-conspirator for the direct violations of statutes committed by Sara's killer.

183.    Had Armslist followed these and other relevant laws, Sara's killer would, upon information and believe, not have had possession of the Armslist Handgun on January 9, 2018 and/or would have been stopped by law enforcement before he could harm Sara.

184.    The laws indirectly violated by Armslist recognize the unreasonably high risk that domestic abusers like Sara's killer pose to the public (and, in particular, domestic abuse victims) when in possession of firearms and seek to shield the public from unlawful acts of gun violence by such individuals.

185. Sara was, thus, within the class of individuals sought to be protected by these and potentially other relevant statutes.

186. Sara's death was precisely the type of foreseeable harm these laws are designed to prevent.

187. Plaintiff is entitled to a theory of relief under negligence per se.

188. Armslist may also be responsible, either directly or as an accomplice and/or co-conspirator for the violation of additional state and or federal firearms statutes.

189. As a result of Armslist's misconduct, Sara, whose estate is herein represented by Richard Webber in his capacity as an administrator, suffered damages – including significant pain, suffering, awareness of impending death, fear of impending death, mental anguish, funeral expenses and other compensable injuries and damages, all to the harm of her estate in an amount to be determined at trial.

190. Sara's children have also suffered substantial harm as a consequence of her murder, including, but not limited to, pecuniary loss, loss of Sara's support and companionship and/or emotional distress.

191. Upon information and belief, the damages for which Armslist is liable are well in excess of $75,000.

Count 3 – Public Nuisance Against Armslist (Referring to Both Defendants)

192. The preceding paragraphs are incorporated by reference herein

193. By intentionally, recklessly and negligently encouraging, assisting and facilitating the completion of  illegal firearms purchases and sales by criminals – including purchases by Prohibited Possessors like Sara's killer – Armslist has intentionally, recklessly and negligently

participated in creating and maintaining a substantial interference with public rights, the use of public places and the activities of the Wisconsin community.

194.    This violated Armslist's duty not to create or maintain a public nuisance under Wisconsin law.

195.    Without limitation, Armslist's acts and omissions as alleged herein have caused created, and maintained substantial and unreasonable interference with the public's health, safety, convenience, comfort, peace, and use of public and/or private property.

196.    Armslist willfully chose to callously disregard the rights of the public and to take no actions to abate this nuisance by maintaining pernicious features of design content encouraging illegal transactions and/or omitting reasonable safeguards on Armslist.com prior to 2018.

197.    The failure to abate this nuisance directly and proximately caused Sara's death.

198.    In addition to the generalized harms suffered by the public from the acts and omissions of Armslist, Armslist's creation of a public nuisance caused Plaintiff to suffer discrete personal injuries of a direct and substantial character other than that which the general public shares (specifically, Sara's murder).

199.    Upon information and belief, Armslist has taken no significant actions to reform Armslist.com even after Sara's murder.

200.    The public nuisance caused by Armslist is thus substantial and ongoing.

201.    This ongoing nuisance merits injunctive relief.

202.    As a result of Armslist's misconduct, Sara, whose estate is herein represented by Richard Webber as an administrator, suffered damages – including significant pain, suffering, awareness of impending death, fear of impending death, mental anguish, funeral expenses and

other compensable injuries and damages, all to the harm of her estate in an amount to be determined at trial.

203.    Sara's children have also suffered substantial harm as a consequence of her murder, including, but not limited to, pecuniary loss, loss of Sara's support and companionship and/or emotional distress.

204.    Plaintiff also seeks appropriate injunctive relief.

205.    Upon information and belief, the damages for which Armslist is liable are well in excess of $75,000.

<u>Count 4 – Civil Conspiracy Against Armslist (Referring to Both Defendants)</u>

206.    The preceding paragraphs are incorporated by reference herein.

207.    At some point before Verstagen's sale of the Armslist Handgun to Sara's killer through Armslist.com in 2018, Armslist LLC, Gibbon, and/or other parties known or unknown conspired with one another to participate in a collaboration/combination to accomplish an unlawful purpose – the supply of firearms to criminals (including Prohibited Possessors like Sara's killer).

208.    Said conspiracy involved the deliberate decision of Armslist LLC, Gibbon and/or other actors to act in concert and with a common purpose to breach various duties imposed by federal and/or state firearms statutes (either directly or as accomplices/co-conspirators) as well as to violate common law duties of reasonable care.

209.    In particular, the above parties conspired in a concerted effort to target Prohibited Possessors as a key component of the customer base for Armslist.com and to encourage, assist and facilitate such individuals in arranging illegal firearms purchases on Armslist.com.

33

210.    They did so through the implementation of elements of design content including, but not limited to, those discussed in this Complaint on Armslist.com.

211.    All of the above actors urged and/or acquiesced in Armslist's misconduct, and Armslist continues to operate negligently and unlawfully as a direct result of the continued agreement and collaboration of these actors.

212.    As a result of the misconduct by these parties, Sara, whose estate is herein represented by Richard Webber in his capacity as an administrator, suffered damages – including significant pain, suffering, awareness of impending death, fear of impending death, mental anguish, funeral expenses and other compensable injuries and damages, all to the harm of her estate in an amount to be determined at trial.

213.    Sara's children have also suffered substantial harm as a consequence of her murder, including, but not limited to, pecuniary loss, loss of Sara's support and companionship and/or emotional distress.

214.    Upon information and belief, the damages for which Armslist is liable are well in excess of $75,000.

Count 5 – Wrongful Death Against Armslist (Referring to Both Defendants)

215.    The preceding paragraphs are incorporated by reference herein.

216.    As a result of all of the misconduct discussed in this Complaint, Armslist directly and foreseeably caused Sara's wrongful death.

217.    As a result of Armslist's misconduct, Sara, whose estate is herein represented by Richard Webber in his capacity as an administrator, suffered damages – including significant pain, suffering, awareness of impending death, fear of impending death, mental anguish, funeral

Case 1:20-cv-01526   Filed 10/01/20   Page 34 of 37   Document 1

expenses and other compensable injuries and damages, all to the harm of her estate in an amount to be determined at trial.

218. Sara's children have also suffered substantial harm as a consequence of her murder, including, but not limited to, pecuniary loss, loss of Sara's support and companionship and/or emotional distress.

219. Upon information and belief, the damages for which Armslist is liable are well in excess of $75,000.

Count 6 – Survival Action Against Armslist (Referring to Both Defendants)

220. The preceding paragraphs are incorporated by reference herein.

221. As already referenced in several of the preceding causes of action, Richard Webber, as the administrator of Sara's estate, is entitled to maintain any actions which Sara would have been able to bring against Armslist as a result of Armslist's misconduct leading to Sara's shooting.

222. All statements in this Complaint to this effect reflect this right.

Count 7 – Piercing the Corporate Veil against Gibbon

223. The preceding paragraphs are incorporated by reference herein.

224. Armslist LLC acts as the alter ego of Gibbon, who controls its operations.

225. Upon information and belief, Armslist LLC is not appropriately capitalized and does not follow corporate formalities.

226. Gibbon uses Armslist LLC as a vehicle for improper, unlawful and negligent conduct that poses a grave risk of harm to the public.

227. Because Armslist LLC is not, in reality, an independent corporate entity, and is, in effect simply another name for Gibbon, this Court should pierce the corporate veil and hold

Gibbon individually responsible for all liabilities imposed on Armslist LLC in connection with this case.

## Requested Relief

WHEREFORE, Plaintiff respectfully prays for judgment against the Defendants as follows:

(i)    an award of compensatory damages, on behalf of the estate of Sara J. Schmidt, from Defendants in amount to be determined at trial;

(ii)    an award of punitive damages, on behalf of the estate of Sara J. Schmidt from Defendants in amount to be determined at trial;

(iii)    an injunction directing the Defendants to: (i) stop creating a public nuisance by removing or reforming certain dangerous elements of design content, (ii) institute various safeguards and (iii) reform their business practices on Armslist.com or, in the alternative, to shut down their operations;

(iv)    a ruling piercing the corporate veil to hold Gibbon personally liable for any damages imposed on Armslist LLC;

(v)    for all costs, disbursements, actual attorneys' fees and all interest due and owing pursuant to Wis. Stat. § 628.46;  and

(vi)   granting such other and further relief as the Court deems just and proper.

### PLAINTIFF DEMANDS A JURY TRIAL.

Date:  October 1, 2020

                        By:   **CANNON & DUNPHY, S.C.**

                            /s/ Patrick O. Dunphy
                            Patrick O. Dunphy
                            State Bar No. 1016947
                            595 North Barker Road
                            P.O. Box 1750
                            Brookfield, WI 53008-1750
                            (262) 796-3701 (Telephone)
                            (262) 796-3711 (Facsimile)
                            pdunphy@c-dlaw.com

/s/ Brett A. Eckstein
Brett A. Eckstein
State Bar No. 1036964
P.O. Box 1750
Brookfield, WI 53008-1750
(262) 796-3702 (Telephone)
(262) 796-3712 (Facsimile)
beckstein@c-dlaw.com

**BRADY**

/s/ Jonathan E. Lowy
Jonathan E. Lowy
Chief Counsel and Vice President,
Legal
840 First Street NE
Suite 400
Washington, DC 20002
202-370-8104
jlowy@bradyunited.org

**BLANK ROME, LLP**

/s/ John Kimball
John D. Kimball
1271 Avenue of the Americas
New York, NY 10020
(212) 885-5000
jkimball@blankrome.com

Case 1:20-cv-01526   Filed 10/01/20   Page 37 of 37   Document 1